**KAZEROUNI LAW GROUP, APC**
David McGlothlin, Esq. (253265)
david@kazlg.com
Pamela E. Prescott, Esq. (328243)
pamela@kazlg.com
245 Fischer Avenue, Suite D1
Costa Mesa, CA 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

[Additional Counsel on Signature Page]

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATALIA P. VALDEZ,<br><br>**Plaintiff,**<br><br>v.<br><br>**CALIPATRIA FIRE DEPARTMENT, CITY OF CALIPATRIA, CALIFORNIA DEPARTMENT OF SOCIAL SERVICES, CALIFORNIA HEALTH AND HUMAN SERVICES AGENCY, CALWORKS, COUNTY OF IMPERIAL, IMPERIAL COUNTY DEPARTMENT OF SOCIAL SERVICES, IMPERIAL VALLEY REGIONAL OCCUPATIONAL PROGRAM, AND JESSE R. LLANAS,**<br><br>**Defendants.** | Case No.: '26CV3076 CAB JAC<br><br>**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR:**<br><br>1. **SEX DISCRIMINATION (42 U.S.C. § 2000E; GOV. CODE § 12940(A-C))**<br>2. **SEX DISCRIMINATION (20 U.S.C. § 1681(A))**<br>3. **HARASSMENT (GOVT. CODE § 12940(j))**<br>4. **SEXUAL HARASSMENT (42 U.S.C. § 2000E; GOVT. CODE § 12940(j))**<br>5. **QUID PRO QUO SEXUAL HARASSMENT (42 U.S.C. § 2000E; GOVT. CODE § 12940(j))**<br>6. **HOSTILE WORK ENVIRONMENT (42 U.S.C. § 2000E; GOVT. CODE § 12940(j))**<br>7. **HOSTILE WORK ENVIRONMENT (20 U.S.C. § 1681(A))** |

8. **RETALIATION (42 U.S.C. § 2000E-3(a); CAL. GOVT. CODE § 12940(h))**
9. **WHISTLEBLOWER RETALIATION IN VIOLATION OF CAL. LAB. CODE § 1102.5**
10. **FAILURE TO PREVENT DISCRIMINATION AND HARASSMENT (CAL. GOVT. CODE § 12940(k))**
11. **VIOLATIONS OF THE BANE ACT, CAL. CIV. CODE, § 52.1**
12. **NEGLIGENT SUPERVISION, HIRING AND RETENTION**
13. **NEGLIGENCE**
14. **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
15. **ASSAULT AND BATTERY**
16. **FALSE IMPRISONMENT**

**DEMAND FOR JURY TRIAL**

**INTRODUCTION**

1. Plaintiff Natalia P. Valdez ("Plaintiff" or "Ms. Valdez") through her undersigned attorneys, brings this action against Defendants Calipatria Fire Department (the "Calipatria Fire Department" or "Fire Department"), City of Calipatria (the "City"), California Department of Social Services ("CDSS"), California Health and Human Services Agency ("CalHHS"), CalWORKs ("CalWORKs"), County of Imperial (the "County"), Imperial County Department of Social Services ("ICDSS"), Imperial Valley Regional Occupational Program ("IVROP"), and Jesse R. Llanas ("Mr. Llanas") (together, "Defendants").

2. This case arises from the pervasive and unlawful sexual harassment, retaliation, and discriminatory conduct experienced by Plaintiff while a participant in Defendants' welfare to work program during her placement at the Calipatria Fire Department. Despite Plaintiff's qualifications and demonstrated commitment to

obtaining a permanent position with the Fire Department, Plaintiff was denied an employment opportunity after refusing the inappropriate sexual advances by her supervisor, Mr. Llanas. Plaintiff was subjected to an unsafe and discriminatory work environment for many months, which eventually lead to her termination and loss of opportunity for permanent job position. What's worse is that Mr. Llanas' propensity for inappropriate and volatile behavior was known, or at the very least, should have been known, to Defendants. This action seeks to address the harm caused by these violations and to hold Defendants accountable for their unlawful actions.

3. Plaintiff makes these allegations on information and belief, with the exception of those allegations that pertain to a plaintiff, or to a plaintiff's counsel, which Plaintiff alleges on personal knowledge.

4. While many violations are described below with specificity, this Complaint alleges violations of the statute cited in its entirety.

5. Unless otherwise stated, all the conduct engaged in by Defendants took place in Imperial County, California.

6. Unless otherwise indicated, the use of a Defendants' name in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of Defendants named.

### JURISDICTION AND VENUE

7. Because Defendants conduct business within the State of California, personal jurisdiction is established.

8. These claims arise under Title VII of the Civil Rights Act of 1964, 42 U.S.C. section 2000e and Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a). As such, this Court has federal question jurisdiction under title 28 United States Code section 1331. Additionally, these claims lie on questions of state law under the same case or controversy. As such, this Court has supplemental

COMPLAINT FOR DAMAGES

KAZEROUNI
LAW GROUP, APC

jurisdiction under title 28 U.S.C. section 1367.

9.  Venue is proper pursuant to 28 U.S.C. § 1391 for the following reasons: (i) Plaintiffs resides within Imperial County; (ii) the conduct complained of herein occurred within this judicial district; and (iii) Defendants conducted business within this judicial district at all times relevant.

**PLAINTIFF EXHAUSTED ALL PRE-FILING AND ADMINISTRATIVE REQUIREMENTS**

10. On January 27, 2026, Plaintiff satisfied the administrative exhaustion requirements for suit under the California Fair Employment and Housing Act ("FEHA") by filing a Complaint with the California Department of Fair Employment and Housing ("DFEH") against each Defendant. On January 27, 2026, the DFEH issued Plaintiff a Right-To-Sue letter (CRD Matter Number: 202512-32873731), entitling Plaintiff to file this lawsuit against Defendants.

11. On January 29, 2026, Plaintiff filed a charge with the Equal Employment Opportunity Commission against the Calipatria Fire Department (Agency Charge No. 488-2026-00374). On March 3, 2026, the Equal Employment Opportunity Commission issued a right to sue letter as to the Calipatria Fire Department.

12. On January 29, 2026, Plaintiff filed a charge with the Equal Employment Opportunity Commission against the City of Calipatria (Agency Charge No. 488-2026-0037). On March 4, 2026, the Equal Employment Opportunity Commission issued a right to sue letter as to the City of Calipatria.

13. On January 29, 2026, Plaintiff filed a charge with the Equal Employment Opportunity Commission against the California Department of Social Services (Agency Charge No. 555-2026-00791). On February 17, 2026, the Equal Employment Opportunity Commission issued a right to sue letter as to the California Department of Social Services.

14. On January 29, 2026, Plaintiff filed a charge with the Equal Employment Opportunity Commission against the California Health and Human Services

COMPLAINT FOR DAMAGES

Agency (Agency Charge No 555-2026-00792). On February 17, 2026, the Equal Employment Opportunity Commission issued a right to sue letter as to the California Health and Human Services Agency.

15. On January 29, 2026, Plaintiff filed a charge with the Equal Employment Opportunity Commission against the CalWORKs (Agency Charge No 488-2026-00376). On March 4, 2026, the Equal Employment Opportunity Commission issued a right to sue letter as to CalWORKs.

16. On January 29, 2026, Plaintiff filed a charge with the Equal Employment Opportunity Commission against the County of Imperial (Agency Charge No 488-2026-00377). On March 4, 2026, the Equal Employment Opportunity Commission issued a right to sue letter as to the County of Imperial.

17. On January 29, 2026, Plaintiff filed a charge a charge with the Equal Employment Opportunity Commission against the Imperial County Department of Social Services (Agency Charge No 488-2026-00378). On March 4, 2026, the Equal Employment Opportunity Commission issued a right to sue letter as to the Imperial County Department of Social Services.

18. On January 29, 2026, Plaintiff filed a charge with the Equal Employment Opportunity Commission against the Imperial Valley Regional Occupational Program (Agency Charge No 488-2026-00379). On March 4, 2026, the Equal Employment Opportunity Commission issued a right to sue letter as to the Imperial Valley Regional Occupational Program.

19. Plaintiff has exhausted her state statutory and common law claims against each Defendant.

20. On January 16, 2026, Plaintiff filed a Government Tort Claim with the Calipatria Fire Department, which was received on January 20, 2026. No action was taken within 45 days of receiving Plaintiff's claim, and the claim is thereby deemed rejected pursuant to Section 912.4(c).

21. On January 16, 2026 and February 13, 2026, Plaintiff filed a Government Tort

COMPLAINT FOR DAMAGES

Claim with the City of Calipatria, which was received on January 20, 2026, February 13, 2026, and February 17, 2026. No action was taken within 45 days of receiving Plaintiff's claim, and the claim is thereby deemed rejected pursuant to Section 912.4(c).

22. On January 16, 2026, Plaintiff filed a Government Tort Claim with the California Department of Social Services, which was received on January 21, 2026. On February 12, 2026, the California Department of Social Services rejected Plaintiff's claim.

23. On January 16, 2026, Plaintiff filed a Government Tort Claim with the California Health and Human Services Agency, which was received on January 21, 2026. On February 12, 2026, the California Health and Human Services Agency rejected Plaintiff's claim.

24. On January 16, 2026, Plaintiff filed a Government Tort Claim with CalWORKs, which was received on January 21, 2026. No action was taken within 45 days of receiving Plaintiff's claim, and the claim is thereby deemed rejected pursuant to Section 912.4(c).

25. On January 16, 2026, Plaintiff filed a Government Tort Claim with the County of Imperial, which was received on January 20, 2026. In a letter dated January 26, 2026, the Claims Administrator for Imperial County confirmed receipt of the claim. No action was taken within 45 days of receiving Plaintiff's claim, and the claim is thereby deemed rejected pursuant to Section 912.4(c).

26. On January 16, 2026, Plaintiff filed a Government Tort Claim with the Imperial County Department of Social Services, which was received on January 20, 2026. In a letter dated January 26, 2026, the Claims Administrator for Imperial County confirmed receipt of the claim. No action was taken within 45 days of receiving Plaintiff's claim, and the claim is thereby deemed rejected pursuant to Section 912.4(c).

27. On January 16, 2026 and January 23, 2026, Plaintiff filed Government Tort Claim

COMPLAINT FOR DAMAGES

with the Imperial Valley Regional Occupational Program, which was received on January 20, 2026 and January 26, 2026. On February 19, 2026, the Imperial Valley Regional Occupational Program rejected Plaintiff's claim.

28. On January 26, 2026, Plaintiff submitted a Uniform Complaint to the Imperial Valley Regional Occupational Program. It has been over 60-days since to the Imperial Valley Regional Occupational Program received that Uniform Complaint and no written notice of its findings have been issued.

## PARTIES

29. Plaintiff is an individual who resides within the County of Imperial, State of California. At all times relevant to this action, Plaintiff was an employee as that term is defined by 42 U.S.C. § 2000e(f); California Government Code § 12940; and California Government Code § 12926.

30. Plaintiff is within the class of persons protected by Title VII, Title IX, and FEHA.

31. Defendant Calipatria Fire Department is a public entity within the City of Calipatria with its offices located at 125 North Park Avenue, Calipatria, CA 92233. At all times relevant, the Calipatria Fire Department was an "employer" as defined by 42 U.S.C. § 2000e and California Government Code § 12926(d). The Calipatria Fire Department also falls under California Government Code § 12940(j). The Calipatria Fire Department is subject to and must comply with Title VII and FEHA.

32. Defendant City of Calipatria is a public entity with its headquarters located at 125 North Park Avenue, Calipatria, CA 92233. At all times relevant, the City of Calipatria was an "employer" as defined by 42 U.S.C. § 2000e and California Government Code § 12926(d). The City of Calipatria also falls under California Government Code § 12940(j). The City of Calipatria is subject to and must comply with Title VII and FEHA.

33. Defendant California Department of Social Services is a public entity with its

COMPLAINT FOR DAMAGES

principal address located at 744 P Street, Sacramento, CA 95814. At all times relevant, the California Department of Social Services was an "employer" as defined by 42 U.S.C. § 2000e and California Government Code § 12926(d). The California Department of Social Services also falls under California Government Code § 12940(j). The California Department of Social Services is subject to and must comply with Title VII and FEHA.

34. Defendant California Health and Human Services Agency is a public entity with its principal address located at 1215 O Street, Sacramento, CA 95814. At all times relevant, the California Health and Human Services Agency was an "employer" as defined by 42 U.S.C. § 2000e and California Government Code § 12926(d). The California Health and Human Services Agency also falls under California Government Code § 12940(j). The California Health and Human Services Agency is subject to and must comply with Title VII and FEHA.

35. Defendant CalWORKs is a public entity with its principal address located at 744 P Street, Sacramento, CA 95814, with an office located at 2995 S. 4th Street, Suite, 105, El Centro, CA 92243. At all times relevant, the CalWORKs was an "employer" as defined by 42 U.S.C. § 2000e and California Government Code § 12926(d). CalWORKs also falls under California Government Code § 12940(j). CalWORKs is subject to and must comply with Title VII and FEHA.

36. Defendant County of Imperial is a public entity with its principal address located at 940 Main St. El Centro, CA 92243. At all times relevant, the County of Imperial was an "employer" as defined by 42 U.S.C. § 2000e and California Government Code § 12926(d). The County of Imperial also falls under California Government Code § 12940(j). The County of Imperial is subject to and must comply with Title VII and FEHA.

37. Defendant Imperial County Department of Social Services is a public entity with its principal address located 2995 S. 4th Street, Suite, 105, El Centro, CA 92243. At all times relevant, the Imperial County Department of Social Services was an

COMPLAINT FOR DAMAGES

"employer" as defined by 42 U.S.C. § 2000e and California Government Code § 12926(d). The Imperial County Department of Social Services also falls under California Government Code § 12940(j). The Imperial County Department of Social Services is subject to and must comply with Title VII and FEHA.

38. Defendant Imperial Valley Regional Occupational Program Defendant is a public education entity that receives federal aid with its principal office located at 687 State Street, El Centro, CA 92243. At all times relevant, the Imperial Valley Regional Occupational Program Defendant was an "employer" as defined by 42 U.S.C. § 2000e and California Government Code § 12926(d). The Imperial Valley Regional Occupational Program also falls under California Government Code § 12940(j).

39. The Imperial Valley Regional Occupational Program is an educational institution as defined by 34 C.F.R. § 106.2. It is subject to and must comply with Title VII, Title IX and FEHA. Imperial Valley Regional Occupational Program is subject to Title IX because it receives federal financial assistance, including through the Workforce Innovation and Opportunity Act (WIOA), and is controlled by seven school districts that are themselves subject to Title IX.

40. Jesse R. Llanas is an individual and the former Fire Chief for the Calipatria Fire Department. Until approximately December of 2025, Mr. Llanas was an employee of the City of Calipatria. Mr. Llanas is believed to reside in the County of Imperial.

41. At all relevant times, Mr. Llanas acted within the course and scope of employment and/or with apparent authority granted by Defendants.

42. At all times relevant, each and every Defendant was an agent and/or employee of each and every other Defendant.

43. In doing the things alleged in the causes of action stated herein, each and every Defendant was acting within the course and scope of this agency or employment, and was acting with the consent, permission, and authorization of each remaining Defendant.

COMPLAINT FOR DAMAGES

44. All actions of each Defendant as alleged herein were ratified and approved by every other Defendant or their officers or managing agents.

## FACTUAL ALLEGATIONS

### a. Background on the CalWORKs, WTW, and WEX Programs

45. California Work Opportunity and Responsibility to Kids (CalWORKs) is cash aid welfare program that provides employment-related assistance and services, and financial aid to California families who need state assistance.

46. CalWORKs is a program within the California Department of Social Services and is oversaw by the California Department of Social Services, which is under the California Health and Human Services Agency.

47. "The California Department of Social Services (CDSS) is a state-supervised, county-administered system that provides oversight of programs that affect nearly 3 million[] of California's most vulnerable residents—foster children and youth, children and families receiving aid through the California Work Opportunities and Responsibility to Kids (CalWORKs)."[1]

48. "The department is 1 of 16 under the umbrella of the Health and Human Services Agency. It has around 4,200 employees located in 51 offices throughout the state, and 58 county welfare departments, offices and community-based organizations."[2]

49. Part of the focus of CalWORKs is to help parents with children obtain a job.

50. As a result, one of the requirements of the program is participation in the Welfare-to-Work (WTW) program, which helps individuals find a permanent employment, receive job focused training and education.

---

[1] https://cwds.ca.gov/glossary/198 (last visited May 12, 2026).
[2] *Id.*

COMPLAINT FOR DAMAGES

51. Under CalWORKs, participants must work a set number of hours under the WTW program to receive monthly compensation and are limited to 60 months total of benefits (or five years).

52. The CalWORKs program provides services and benefits to every county within California, including the County of Imperial.

53. CalWORKs is operated locally by each county's welfare program.

54. In the case of the County of Imperial, CalWORKs operates out of the Imperial County Department of Social Services' office in El Centro, California.

55. In order to apply for the CalWORKs program, individuals apply through the office of the county in which they reside or online through https://benefitscal.com/.

56. The Imperial Valley Regional Occupation Program (IVROP) is a Regional Occupational Center and Program that serves the County of Imperial and provides career focused educational and employment services.

57. IVROP partners with businesses and public entities to help participants receive job training, work experience, and education. One of these partnerships includes a partnership with the City of Calipatria and the Calipatria Fire Department.

58. One of the work-related programs that IVROP oversees is the Work Experience (WEX) program, which provides job experience for individuals who just graduated from school or are looking to get into a new field of employment.

59. The goal of WEX is to provide job opportunities, exposure to the work force, and employment training and experience in the participant's desired field.

60. The WEX program is limited to CalWORKs participants and was founded by the Imperial County Department of Social Services.

61. Upon information and belief, the County of Imperial, IVROP and the Imperial County Department of Social Services work jointly pursuant to written contracts in which IVROP acts as subcontractor and agent of the County of Imperial, the Imperial County Department of Social Services and CalWORKs.

COMPLAINT FOR DAMAGES

62. Plaintiff is further informed and believes, that IVROP, WTW and CalWORKs employees hold regular meetings together to discuss the services in which IVROP provides on behalf of CalWORKs, the County of Imperial and the Imperial County Department of Social Services.

63. Upon information and belief, IVROP and the County of Imperial also have a written contract governing the WEX program.

64. Upon information and belief, these regular meetings include IVROP's WEX program that services CalWORKs participants.

65. Upon information and belief, IVROP and the Imperial County Department of Social Services also jointly track and control data relevant to their joint contractual services, to, in part, aid their efforts to obtain state and federal funding. IVROP has a dedicated data manager that oversees this data system.

66. CalWORKs participants can enroll in IVROP's WEX program to fulfill their WTW hours. As part of the WTX/WEX program, participants must report their work schedule and hours to CalWORKs each month.

67. Jointly, IVROP, CalWORKs (which is part of the California Department of Social Services and California Health and Human Services Agency), and the Imperial County Department of Social Services oversee, manage and control the WTW/WEX program.

68. Participants in the WTW/WEX program are assigned a social worker through the County of Imperial – Employment Services as well as a WTW case manager.

69. The WEX program is run, managed, oversaw, supervised, implemented and maintained by employees of IVROP, CalWORKs, and the Imperial County Department of Social Services.

70. Upon information and belief, these employees include but are not limited to: (1) Kennya Dominguez ("Ms. Dominguez"), the Development Specialist at IVROP; (2) George Gomez ("Mr. Gomez"), a Social Worker for the County of Imperial;

COMPLAINT FOR DAMAGES

(3) Jessica Angel, WTW Case Manager; and (4) Vicente Ayala, Director of Business and Human Services for IVROP.

71. If a CalWORKs participant does not show up and complete their WTW placement, they will lose their cash aid.

72. Upon information and belief, IVROP and the County of Imperial (through the Imperial County Department of Social Services) have a contract with the City of Calipatria to participate in the WEX program.

73. Plaintiff is further informed and believes that the City of Calipatria (including the Calipatria Fire Department) are informed that the participants are part of CalWORKs, and that participants have a set number of hours a month in which they are required to complete under the WTW program.

74. Upon information and belief, the County of Imperial pays for the workers' compensation insurance for the CalWORKs participants.

75. IVROP, California Department of Social Services and California Health and Human Services Agency (through CalWORKs), the County of Imperial (through the Imperial County Department of Social Services) in conjunction with the City of Calipatria (through the Calipatria Fire Department) jointly share the ability to discipline a CalWORKs participant placed in a WEX program at the Calipatria Fire Department.

76. These entities also have the joint ability to remove a participant from their placement and can control, impact or affect a CalWORKs participant's sanctions under the CalWORKs program, which in turn effects their cash benefits.

77. These entities have the ability to approve the continuation or termination of a placement, and CalWORKs participants must report to employees within of all these entities.

78. Each of these entitles handles complaints of sexual harassment and discrimination.

COMPLAINT FOR DAMAGES

79. The California Department of Social Services and California Health and Human Services Agency (through CalWORKs) set the number of hours a CalWORKs participant must complete each month. IVROP, the County of Imperial (through the Imperial County Department of Social Services), and the City of Calipatria (through the Calipatria Fire Department) ensures these hours are met through the WTW/WEX program.

80. CalWORKs acts as an agent for the California Department of Social Services and California Health and Human Services Agency. Specifically, CalWORKs acts as an agent for the California Department of Social Services, which is under the California Health and Human Services Agency.

81. The County of Imperial (through the Imperial County Department of Social Services) acts as the local administrative agent for CalWORKs. The County of Imperial and the Imperial County Department of Social Services jointly manage the CalWORKs program on the county level.

82. IVROP acts as an agent for the County of Imperial and Imperial County Department of Social Services by offering CalWORKs participants job placements to meet their WTW hours.

b. **Ms. Valdez Begins Her Employment with the Calipatria Fire Department in June of 2025**

83. After tremendous hard-work a dedication, Ms. Valdez graduated college in March of 2025. Upon obtaining her degree, Ms. Valdez was eager to begin her career serving her community.

84. Around this time, Ms. Valdez (a resident of the City of Calipatria at all times relevant, which is in the County of Imperial), applied for the CalWORKs program through the Imperial County Department of Social Services.

85. Once Ms. Valdez was accepted to the CalWORKs program, she was assigned a Case Manager through the County and Mr. Gomez was assigned as her Social Worker.

- 14 -

COMPLAINT FOR DAMAGES

86. Mr. Gomez recommended that Ms. Valdez obtain her WTW credits through IVROP's WEX program. Mr. Gomez then put Ms. Valdez in touch with Ms. Dominguez from IVROP.

87. Ms. Valdez was enrolled in IVROP's WEX program so that she could fulfill her WTW hours in order to receive her financial aid, which was capped at 20 hours a week, and 60 hours a month.

88. Ms. Dominguez held an interview with Ms. Valdez to learn more about Ms. Valdez's long term career goals and qualifications.

89. Ms. Valdez informed Ms. Dominguez that she was interested in serving the community and obtaining a job with the City or County.

90. Ms. Dominguez recommended that Ms. Valdez be placed with the Calipatria Fire Department, which had an open position, through the WEX program.

91. On or about June 21, 2025, Ms. Valdez started working for the Calipatria Fire Department under the WEX program.

92. As part of the WEX / WTW programs, Ms. Valdez was required to submit her monthly work schedule and hours at the Calipatria Fire Department to CalWORKs by the 5th of every month.

   c. **The Calipatria Fire Department Coerces Ms. Valdez into Working More than Her Required 60 Hours a Month Under the Promise of a Permanent Job Position**

93. Upon joining the Calipatria Fire Department, Ms. Valdez was eager to learn, gain experience, and be part of a team that served her community.

94. Ms. Valdez was motivated to make a positive impact on her life and those around her and was looking forward to her job placement leading to a permanent employment position with the Calipatria Fire Department.

95. The Fire Chief for the City of Calipatria Fire Department during Ms. Valdez's employment was Mr. Llanas.

- 15 -

COMPLAINT FOR DAMAGES

96. Mr. Llanas was promoted to Chief of the Calipatria Fire Department in or around August of 2019 after serving as a full-time firefighter since 2002.

97. By the time that Ms. Valdez started working for Mr. Llanas, he had over 20-years of experience working for the Calipatria Fire Department and was in a position of power and superiority.

98. Mr. Llanas was also Ms. Valdez's direct supervisor and often approved her hours that were submitted to CalWORKs each month.

99. Shortly after beginning her placement with the Calipatria Fire Department, Mr. Llanas began dangling the prospect of a permanent job position over Ms. Valdez's head. Desperate to obtain her dream job, and due to Mr. Llanas' position of power, Ms. Valdez complied with Mr. Llanas' requests.

100. Mr. Llanas would often remind Ms. Valdez that she had to "prove to [him] that she wanted to job."

101. One of those requests was that Ms. Valdez work as many hours as she could all while knowing that Ms. Valdez was only supposed to work 20 hours a week.

102. Ms. Valdez quickly made it her routine to arrive at the Fire Station at around 8:00am Monday through Friday. Sometimes Ms. Valdez would work 47-hours a week, without any compensation above the 20-hour WTW requirements.

103. By way of example, during the month of July of 2025, Ms. Valdez worked 79-hours, without any compensation beyond the 60 WTW hours.

104. Ms. Valdez often worked eight-to-ten-hour shifts at the Fire Department.

105. Defendants knew or should have known that Ms. Valdez was working many more hours than her 60 WTW hours without any compensation.

106. Ms. Valdez submitted her hours each month directly to CalWORKs and those hours were approved by employees of the City of Calipatria.

107. IVROP is also believed to have direct knowledge that Ms. Valdez was working beyond her required hours. IVROP and CalWORKs employees were required to discuss the WEX participants frequently.

- 16 -
COMPLAINT FOR DAMAGES

108. However, not one employee from IVROP, CalWORKs, or the County came out to have a site visit with Ms. Valdez to see the conditions in which she was working under.

109. This is especially troubling given that, upon information and belief, IVROP, CalWORKs and the County of Imperial had the contractual ability to conduct site visits (which extended to interviewing staff and participants) so that they could monitor, create reports, and observe the placement for the safety of the CalWORKs participant.

110. Additionally, Mr. Gomez and Ms. Dominguez were required to communicate about Ms. Valdez's placement at the Calipatria Fire Department.

111. Mr. Gomez met with Ms. Valdez about 2 or 3 times a month during her time at the Calipatria Fire Department.

112. Ms. Valdez informed Mr. Gomez on many occasions that she was working long hours at the Calipatria Fire Department, yet Mr. Gomez did nothing to ensure that Ms. Valdez was in a safe job placement.

113. Ms. Dominguez also would speak with Mr. Llanas every 2-3 weeks do discuss Ms. Valdez's work performance and how she was doing at the Calipatria Fire Department.

114. Additionally, upon information and belief, Ms. Dominguez had placed at least one other female CalWORKs participant with the Calipatria Fire Department in the past, including an individual named "Maria," who was also under the supervision of Mr. Llanas.

115. Ms. Dominguez and Mr. Llanas are believed to have known each other prior to Ms. Valdez being placed at the fire department because of past WEX placements at the Fire Department.

116. Mr. Llanas' evaluation of Ms. Valdez's work performance directly impacted her CalWORKs benefits as she could lose her benefits if she did not meet the WTW hours and continue her placement with the Calipatria Fire Department.

- 17 -

COMPLAINT FOR DAMAGES

### d. **The City of Calipatria Misclassified Ms. Valdez's Employment**

117. Not only was the City of Calipatria having Ms. Valdez working well beyond her 60-hours a month, Ms. Valdez was also performing the same job role as an employee of the Calipatria Fire Department, without being paid regular wages or being properly classified as an employee.

118. During her employment with the Calipatria Fire Department, Ms. Valdez was provided a fire-proof jacket and assisted with emergency calls where there were active fires.

119. On one occasion when there was a large active fire, and other firefighters were throwing up due to the smoke inhalation, Ms. Valdez assisted with the situation by running to get additional equipment and water.

120. Ms. Valdez also frequently rode in the fire truck, assisted with the hoses for active fires, and even put out fires using her training by covering the flames with dirt.

121. Additionally, Ms. Valdez regularly responded to emergency calls and often acted as an interpreter when the individuals on the scene did not speak English.

122. Ms. Valdez would also use her training to pay attention to the vitals of individuals that were injured.

123. As part of her employment, Plaintiff was provided with access to City equipment, worked out of the fire station, rode in a City vehicle, and responded to emergencies. These duties are integral to the Calipatria Fire Department's core operations.

124. Employees of the Calipatria Fire Department, including Mr. Llanas and Chris Hanks ("Mr. Hanks"), exerted extensive control and direction over Ms. Valdez's work. She had to follow protocols and take direction from Mr. Llanas and Mr. Hanks.

COMPLAINT FOR DAMAGES

125. If Ms. Valdez failed to follow the instructions of Mr. Llanas, Mr. Hanks or any other superior at the Calipatria Fire Department, Ms. Valdez could be disciplined and/or penalized.

126. Mr. Llanas and other employees at the Calipatria Fire Department had a heavy hand in over-seeing the day-to-day work of Ms. Valdez, and these City employees controlled how Ms. Valdez's work was to be performed.

127. Ms. Valdez was required to take direction and commands from City employees.

128. Ms. Valdez devoted her full-time efforts to fulfilling her job requirements.

129. Ms. Valdez did all this with the good intentions of helping her community but was not being compensated as an employee.

130. Indeed, Plaintiff was engaged in an employer-employee relationship and not that of an independent contractor or volunteer with the City of Calipatria until her termination in October of 2025.

131. However, by allowing Ms. Valdez to assume the role of a firefighter, Ms. Valdez was put in a dangerous situation as she was not even provided with a helmet or a mask, yet she was forced to work on active fires.

132. This conduct also created the foreseeable risk of harm to the general public.

e. **In August of 2025 Ms. Valdez is Denied a Permanent Firefighter Position because She Refused Mr. Llanas' Sexual Advances**

133. In July of 2025 or early of August 2025, Ms. Valdez had told Mr. Llanas that this was her dream job. This is when Mr. Llanas informed Ms. Valdez that they were hiring for a position and that she should apply.

134. Shortly thereafter, Ms. Valdez applied for the Paid Call / Reserve Firefighter Position with the Calipatria Fire Department, with a pay of $16.50 an hour.

135. On or around August 12, 2025, the Calipatria Fire Department sent Plaintiff a letter thanking her for her interest in a permanent Firefighter position. The letter stated that Ms. Valdez was "invited to participate in a process that will hopefully lead to [her] becoming a Reserve Firefighter."

- 19 -
COMPLAINT FOR DAMAGES

136. Ms. Valdez was instructed to report to the Calipatria Fire Department on August 16, 2025, at 8:00 a.m. to participate in a written test, a physical agility test, and an oral board examination.

137. Ms. Valdez tirelessly prepared for the interview, physical fitness test, and studied as much as she could for the written test using the study guide issued by the Calipatria Fire Department.

138. However, once Mr. Llanas caught wind that Ms. Valdez applied for this position, he began to make inappropriate sexual advancements towards Ms. Valdez.

139. On or about August 16, 2025, Ms. Valdez went to Mr. Llanas' office to ask him questions about the Paid Call / Reserve Firefighter Position.

140. During that conversation, Mr. Llanas told Ms. Valdez if she wanted "extra points" she needed to do "extra credit."

141. This comment made Ms. Valdez uncomfortable, and she smiled awkwardly to defuse the situation and left his office.

142. Later that same day, Ms. Valdez was informed by Mr. Llanas that the reason she was not selected for the position was because she would not do the "extra credit" or give Mr. Llanas "chon-chon" (a slang term for sex).

143. This is when Ms. Valdez realized Mr. Llanas' prior comments were inappropriate sexual advances and an invitation for quid pro quo, which Ms. Valdez refused to engage in.

144. Around this time, Ms. Valdez was also informed by Mr. Llanas that he controlled who was offered a job position at the City of Calipatria Fire Department.

145. Mr. Llanas was also Ms. Valdez's direct supervisor and the primary person in charge of signing off on her hours under the WTW/WEX program.

146. Ms. Valdez feared that if she upset Mr. Llanas that could impact her ability to obtain a permanent position at the Calipatria Fire Department and her CalWORKs benefits.

COMPLAINT FOR DAMAGES

147. Ms. Valdez was frustrated that she did not receive the Paid Call / Reserve Firefighter Position because she did well on her exams and was qualified for this position.

148. Ms. Valdez also received frequent praise from the other firefighters and positive performance reviews, including on her monthly reports submitted to CalWORKs.

149. For instance, in July of 2025, she received positive reviews from her from Mr. Hanks when he approved her CalWORKs hours that month.

150. A few days after Ms. Llanas informed Ms. Valdez why she did not get the job, she received a formal denial letter dated August 19, 2025.

151. The letter explained that Ms. Valdez would still be put on an eligibility list for a period of six-months.

152. Ms. Valdez found out during this time that two other male applicants received the position.

153. Mr. Llanas knew of the power that he had over Ms. Valdez. Mr. Llanas also knew that Ms. Valdez was in a vulnerable financial position as she was reliant on state assistance and was eager to obtain a permanent job position with the Calipatria Fire Department.

154. Mr. Llanas continued to dangle the prospect of a job opportunity over Ms. Valdez's head and told Ms. Valdez that he was waiting for someone to leave so that he could offer her a permanent position.

e. **From August 2025 to October 2025 Mr. Llanas's Sexual Harassment and Discrimination Intensifies**

155. After that inappropriate interaction on August 16, 2025, Mr. Llanas' harassing behavior towards Ms. Valdez got even worse.

156. Nearly every day since she applied for the permanent position, Mr. Llanas would harass and inappropriately grab or touch Ms. Valdez. However, Ms. Valdez was scared to report the harassment out of fear for her safety and her job.

COMPLAINT FOR DAMAGES

157. For instance, on one occasion, while passing by Ms. Valdez, Mr. Llanas touched Ms. Valdez's buttocks. Ms. Valdez immediately told Mr. Llanas "No" and stepped out of the way. Mr. Llanas simply laughed and walked away.

158. After this unwanted touching, Ms. Valdez tried to avoid Mr. Llanas as much as she could and eventually started wearing baggy clothes and no make-up to try to protect herself from the unwanted sexual harassment. However, Mr. Llanas' sexual harassment only continued.

159. For instance, in September of 2025, on one occasion, Ms. Valdez and Mr. Llanas drove in his vehicle to a fire scene.

160. During that car ride, Mr. Llanas repeatedly attempted to touch Ms. Valdez's breast area.

161. Each time Mr. Llanas attempted to touch Ms. Valdez she turned away to avoid his contact.

162. During this car ride, Mr. Llanas was the driver of the vehicle and intentionally deprived Ms. Valdez of her freedom of movement by using a physical barrier of a moving vehicle with closed doors to confine Ms. Valdez and subject her to sexual harassment.

163. Ms. Valdez was harmed emotionally by this situation as she was forced fend off unwanted advancements from her boss, Mr. Llanas.

164. Ms. Valdez felt scared, trapped, and helpless during this encounter as Mr. Llanas was her superior and she did not want to jeopardize future employment opportunities with the Calipatria Fire Department. This is especially true because she was informed by Mr. Llanas that although she was denied the position, she was placed on a waitlist for a formal position.

165. Later that same day, at about 7:30 p.m., after a fire scene ended and everyone was leaving, Mr. Llanas unexpectedly jumped on Ms. Valdez from behind.

166. Due to this ongoing harassment, Ms. Valdez was feeling exhausted, anxious, and emotionally overwhelmed by Mr. Llanas' inappropriate behavior.

COMPLAINT FOR DAMAGES

KAZEROUNI LAW GROUP, APC

167. Mr. Llanas' continued unwanted physical assaults and sexual advances made Ms. Valdez feel extremely uncomfortable and stressed.

168. On another occasion, the morning of October 2, 2025, Ms. Valdez was in the day room with several other Firefighters, including Mr. Hanks along with Mr. Llanas, Alex Sadberry ("Mr. Sadberry"), and Rafeal "Rafla" Sanchez ("Mr. Sanchez") discussing department trucks.

169. Ms. Valdez was seated across from Mr. Hanks and Mr. Llanas. Without any prompting, Mr. Llanas pulled Ms. Valdez's chair closer to him and told Ms. Valdez he wanted to show her something on his phone.

170. This is when Mr. Llanas showed Ms. Valdez a picture that he had secretly taken of her crotch area and stated loudly to the room that this picture was for his "spank book."

171. Ms. Valdez instantly felt humiliated, shocked, embarrassed, and uncomfortable.

172. This photo was a complete violation of Ms. Valdez's privacy and not something she consented to or was even aware had been taken until that moment.

173. Later that same day, around 1:30 p.m., Ms. Valdez was in the front office assisting with running Ethernet cables through the ceiling.

174. Mr. Llanas instructed Ms. Valdez to hold the ladder steady for Mr. Sanchez while he was up on a ladder.

175. Ms. Valdez complied with Mr. Llanas' orders and stood against the ladder.

176. Then, Mr. Llanas came behind Ms. Valdez and thrust his body against hers and licked the back of her neck.

177. Ms. Valdez felt immediately uncomfortable and violated and asked Mr. Llanas if she could use the restroom.

178. When Ms. Valdez entered the restroom, she closed two of the bathroom doors to signal privacy, which was customary at the station to indicate the restroom was occupied by a female employee.

COMPLAINT FOR DAMAGES

179. While Ms. Valdez was using the restroom, Ms. Valdez heard a male voice at the sink area and realized that Mr. Llanas was inside washing his hands, even though he knew Ms. Valdez was in the bathroom. That is when another employee named Alex Fernandez ("Mr. Fernandez") entered the restroom, not realizing Ms. Valdez was inside.

180. When Mr. Fernandez asked if anyone was there, Ms. Valdez identified herself, and then Mr. Fernandez and Mr. Llanas exited the bathroom.

181. This only added to Ms. Valdez's feelings of being violated while at work and was a complete invasion of privacy.

182. Later that same day, Ms. Valdez was outside washing the firetruck when Mr. Llanas suddenly pulled Ms. Valdez against the wall and grabbed her aggressively in her crotch, buttocks, and breast area.

183. Ms. Valdez immediately broke free from his grasp and ran to the restroom crying.

184. Then, a few hours later, Ms. Valdez and another ride along participant, Priscilla Zamora ("Ms. Zamora") went on a call.

185. Earlier that day, Ms. Valdez heard Mr. Llanas ask Ms. Zamora if she was single.

186. When Ms. Valdez and Ms. Zamora retuned to the station, Mr. Llanas continued his inappropriate behavior.

187. For instance, Mr. Llanas asked Ms. Zamora if she had a Facebook account and then searched for her profile from his phone in front of other employees.

188. Mr. Llanas then sent Ms. Zamora a friend request and demanded that she accept it.

189. Later than day, Ms. Zamora messaged Ms. Valdez privately and informed her that Mr. Sadberry overhead Mr. Llanas making inappropriate comments.

190. This situation made Ms. Valdez very uncomfortable and reinforced Mr. Llanas' pattern of unprofessional and inappropriate conduct.

- 24 -

COMPLAINT FOR DAMAGES

e. **In October of 2025 the Sexual Harassment and Discrimination Gets so Severe and Intolerable Ms. Valdez Files a Complaint**

191. The incidents described herein are merely exemplars of nearly two and a half months of pervasive sexual harassment, unwanted touching and assaults from the period of mid-August of 2025 through early October of 2025.

192. Other instances of sexual harassment include Mr. Llanas': (1) discussions of sex toys during working hours; (2) comments to Ms. Valdez that she "looked beautiful", that her "ass looked fat in those jeans", and that he wanted to "scoop Ms. Valdez up with biscuits and gravy"; and (3) frequent touching and/or attempted touching of Ms. Valdez's buttocks, crotch and breasts; (4) massaging Ms. Valdez's shoulders; and (5) forcefully grabbing and jumping on Ms. Valdez.

193. Mr. Llanas' harassing behavior did not subside, and Ms. Valdez felt extremely distressed, upset, depressed and was unable to cope with being subjected to this pervasive sexual harassment.

194. Shortly after the incidents in early October of 2025, on or about October 4, 2025, Ms. Valdez broke down crying and confided in Mr. Hanks as well as several other employees at the Calipatria Fire Department.

195. Ms. Valdez explained to her co-workers some of the harassment she was experiencing and the other firefighters expressed extreme concern.

196. Ms. Valdez reported the harassment to the Imperial Valley Regional Occupational Program as well as the City of Calipatria.

197. Ms. Valdez was initially scared to report these incidents due to Mr. Llanas' superior position within the Fire Station and because Mr. Llanas had threatened that he could ruin someone's reputation in the community if they disobeyed him.

198. Mr. Llanas also made it clear to Ms. Valdez that he made the hiring and termination decisions for the Fire Department.

199. In addition, Mr. Llanas also frequently talked to Ms. Valdez about murder, wanting to commit suicide, and made it known that he had guns in his office.

200. Ms. Valdez feared for her life if she reported Mr. Llanas and fears for her life to the present day.

201. This situation has caused Ms. Valdez significant emotional distress, anxiety, and fear.

202. What began as the potential for a lifelong career, turned into an unsafe and uncomfortable work environment, which resulted in Ms. Valdez being forced to terminate her assignment at the Fire Department and give up on her dreams of becoming a Firefighter.

203. Indeed, after Ms. Valdez reported the incident, she was advised by other members of the fire department to "stay away" from the Calipatria Fire Department, which prevented her from remaining as an applicant for a permanent position and prevented her from continuing her WTW/WEX assignment. Ms. Valdez was required to complete her hours at another placement.

204. Ms. Valdez also turned down a job with the San Diego Sherrif Department in September of 2025 to pursue the promise of a permanent job with the City of Calipatria Fire Department.

205. This experience has been emotionally devastating for Ms. Valdez and has significantly impacted her self-worth, motivation and confidence.

206. During her placement with the City of Calipatria Fire Department, Ms. Valdez diligently completed her required 20 hours per week under the CalWORKs Welfare-to-Work program and even worked many hours beyond her required time unpaid. She always showed up on time, worked hard, and learned as much as she could.

e. **Defendants Were on Notice of Mr. Llanas' Inappropriate Conduct**

207. Mr. Llanas exhibited a pattern of consistent harassment and abuse that occurred repeatedly whenever Ms. Valdez was at the station.

COMPLAINT FOR DAMAGES

208. There were several incidents when Mr. Llanas would massage Ms. Valdez's shoulders and grab her inappropriately her in front of other firefighters.

209. There was also chatter among the firefighters about how inappropriate Mr. Llanas behavior was and that Mr. Llanas often spoke about murder and guns with his co-workers.

210. Mr. Llanas exhibited this volatile and threatening behavior that is believed to have been witnesses by other City of Calipatria employees prior to Ms. Valdez's employment, including the fact that Mr. Llanas often talked about murder, committing suicide, and was known to have "dark humor" and guns in his office.

211. Mr. Llanas also had a tattoo of a devil that was visible at work.

212. Mr. Llanas exhibited inappropriate behavior to other female employees and volunteers including Ms. Zamora and another employee named Nydia Navarro.

213. Ms. Navarro was the City of Calipatria's first female full-time firefighter.

214. Ms. Valdez was informed that Mr. Llanas bought Nydia Navarro along with another female employee named Katrina Martinez a sex toy and inappropriately touched Nadia at work.

215. Ms. Valdez also witnessed Katrina Martinez frequently lock herself in a hallway room and avoid talking to Mr. Llanas, presumably to avoid his inappropriate behavior.

216. Additionally, there was talk among the firefighters that the prior WEX/WTW placement, Maria, may have left because of Ms. Llanas' inappropriate behavior.

217. After she left her placement, Ms. Valdez was also informed by an Imperial County employee at the Behavioral Health Social Services that she had heard about other female employees having issues with Mr. Llanas.

218. What's even worse is that during Ms. Valdez's employment the security cameras conveniently did not work, which was known by Mr. Llanas, and allowed his inappropriate behavior to continue.

- 27 -

COMPLAINT FOR DAMAGES

219. Ms. Valdez's career path has been completely derailed, and Ms. Valdez was forced to seek emotional support from the Imperial County Behavioral Health Services and was assigned to 20-hours per week of mental health services through the CalWORKs Welfare-to-Work program.

220. Ms. Valdez was denied employment and the ability to obtain the employment educational benefits she was supposed to receive at the Calipatria Fire Department.

221. Ms. Valdez has been dealing with severe mental trauma, PTSD, anxiety and depression. She is currently receiving mental health treatment and therapy.

222. Due to her fragile mental state, Ms. Valdez has been unable to find employment or otherwise engage in other work-placements through CalWORKs.

## CAUSES OF ACTION

### COUNT I
### SEX DISCRIMINATION
### IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
### 42 U.S.C. § 2000e-2
### *Against All Defendants Except Mr. Llanas*

223. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

224. At all relevant times, Plaintiff was an employee within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*.

225. Upon information and belief, Defendants regularly employ fifteen (15) or more persons.

226. At all times relevant, Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-2, was in full force and effect and binding on each Defendant in which this claim is asserted against.

227. It is an unlawful employment practice for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any

- 28 -
COMPLAINT FOR DAMAGES

individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

228. It is also an unlawful employment practice for an employer "to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(2).

229. Similarly, "[i]t [is] an unlawful employment practice for an employment agency to fail or refuse to refer for employment, or otherwise to discriminate against, any individual because of his race, color, religion, sex, or national origin, or to classify or refer for employment any individual on the basis of his race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(b).

230. Labor organizations are also prohibited from "exclude[ing] or to expel[ling] from its membership, or otherwise to discriminate against, any individual because of his race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(c)(1). Such organizations also cannot, or cause another to, "limit, segregate, or classify its membership or applicants for membership, or to classify or fail or refuse to refer for employment any individual, in any way which would deprive or tend to deprive any individual of employment opportunities, or would limit such employment opportunities or otherwise adversely affect his status as an employee or as an applicant for employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(c)(2)-(3).

231. It is also "an unlawful employment practice for any employer, labor organization, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs to discriminate against any individual because of his race, color, religion, sex, or

- 29 -

COMPLAINT FOR DAMAGES

national origin in admission to, or employment in, any program established to provide apprenticeship or other training." 42 U.S.C. § 2000e-2(d).

232. Defendants were at all material times an "employer" within the meaning of 42 U.S.C. § 2000e-2, and as such they are each prevented from engaging in illegal harassment as set forth in 42 U.S.C. § 2000e-2.

233. Plaintiff was subjected to the following conduct because of an animus towards her sex, including, among other things being: (1) subjected to pervasive sexual harassment due to her sex, (2) denied an employment position because of her sex, which includes a denial of the Paid Call / Reserve Firefighter position and being prevented from continuing her WEX/WTW placement due to her sex; (3) and subjected to a work environment where men would receive preferential treatment.

234. Plaintiff was subjected to unwanted discrimination and treated differently because of her sex. This discrimination was caused by Defendants who fostered an environment that tolerated, encouraged, and/or allowed discrimination based on sex, thereby negatively impacting Plaintiff's employment.

235. Defendants and their partners, agents and employees, created an environment that, among other things, tolerated sexual harassment, which negatively impacted the terms and conditions of Plaintiff's employment and CalWORKs placement by denying her the benefits of a Paid Call / Reserve Firefighter position and the ability to continue her WEX/WTW placement.

236. Defendants and their partners, agents and employees discriminated against Plaintiff because of her sex.

237. Plaintiff is informed and believes that similarly situated male employees were treated much more favorably as evidenced by the harassment targeted at women employees only, including Plaintiff.

238. Plaintiff's sex was a substantial motivating factor for the unwanted touching, intimidation, assaults, creation of an overall hostile work environment, adverse

COMPLAINT FOR DAMAGES

employment actions, denial of the Paid Call / Reserve Firefighter position, and termination from her WEX/WTW placement.

239. The conduct of Defendants and their partners, agents and employees was a substantial factor in causing Plaintiff's harm.

240. Defendants' conduct complained of herein is in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-2.

241. As an actual and proximate result of the aforementioned violations, Plaintiff has been harmed in an amount according to proof.

As an actual and proximate result of Defendants' discrimination, Plaintiff has lost wages and benefits, and suffered extreme emotional distress, depression, PTSD, and Major Depressive Disorder.

**COUNT II**
**SEX DISCRIMINATION**
**IN VIOLATION OF FEHA**
**GOV. CODE § 12940(A-C))**
*Against All Defendants Except Mr. Llanas*

242. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

243. Pursuant to California Government Code Section 12940(a), *et seq.,* of California Fair Housing and Employment Act (hereinafter "FEHA"), it is unlawful employment practice "[f]or an employer because of . . . sex, gender, gender identity, gender expression …to discriminate against the person in compensation or in terms, conditions, or privileges of employment.*"*

244. Additionally, it is unlawful for "any person to discriminate against any person in the selection, termination, training, or other terms or treatment of that person in any apprenticeship training program, any other training program leading to employment, an unpaid internship, or another limited duration program to provide unpaid work experience for that person because of the . . . sex, gender,

gender identity, gender expression. . .  of the person discriminated against. California Government Code Section 12940(c).

245. At all times herein set forth, for purposes of prohibition against discrimination in the workplace, "'employer' includes any person regularly employing five or more persons, or any person acting as an agent of an employer …." Gov. Code § 12926(d).

246. Upon information and belief, Defendants regularly employ five (5) or more persons.

247. To establish a prima facie case of discrimination under FEHA, the Plaintiff must provide evidence that: (1) she was a member of a protected class; (2) she was qualified for the position she sought or was performing competently in the position she held; (3) she suffered an adverse employment action, such as termination, demotion or denial of an available job; and (4) some other circumstance suggests discriminatory motive. *Guz v. Bechtel Nat'l, Inc.,* 100 Cal. Rptr. 2d 352, 379 (Cal. 2000).

248. Plaintiff is a member of a protected class due to her sex, gender, gender identity, and gender expression as a woman.

249. Plaintiff was able to perform the essential job duties as a firefighter.

250. Plaintiff was qualified for the position of a Paid Call / Reserve Firefighter and was performing competently in a similar position through her placement with WEX/WTW.

251. Plaintiff suffered an adverse employment action by being denied the Paid Call / Reserve Firefighter position and wrongfully terminated from her placement with WEX/WTW.

252. Defendants took adverse employment action against Plaintiff due to Plaintiff's status as a woman.

COMPLAINT FOR DAMAGES

253. Plaintiff was denied the Paid Call / Reserve Firefighter position because she would not sleep with her boss, Mr. Llanas, and was terminated after reporting the sexual harassment.

254. There was a discriminatory motive because Plaintiff suffered adverse employment actions because of her status as a woman.

255. Plaintiff is informed and believes that similarly situated male employees were treated much more favorably as evidenced by the harassment targeted at women employees only, including Plaintiff.

256. Plaintiff was discriminated against because of her sex by, among other things being: (1) subjected to pervasive sexual harassment due to her sex, (2) denied an employment position because of her sex, which includes a denial of the Paid Call / Reserve Firefighter position and being prevented from continuing her WEX/WTW placement due to her sex; (3) and subjected to a work environment where men would receive preferential treatment.

257. As a proximate result of Defendants' conduct, Plaintiff suffered damages in terms of emotional distress and other pecuniary loss according to proof.

258. FEHA provides an award for attorney's fees and costs incurred by a prevailing plaintiff in an action brought under its provisions.

259. Plaintiff has retained attorneys in order to prosecute this action. Plaintiff has incurred and will continue to incur attorney's fees and costs prosecuting this action.

260. Plaintiff is entitled to an award of reasonable attorney's fees and costs.

261. Defendants' actions were willful, malicious, and oppressive, and were committed with the intent to injure Plaintiff in conscious disregard of Plaintiff's legal rights.

//

//

COMPLAINT FOR DAMAGES

## COUNT III
## SEX DISCRIMINATION
## IN VIOLATION OF
## TITLE IX OF THE EDUCATION AMENDMENTS OF 1972
## 20 U.S.C. § 1681(A)
### *Against IVROP*

262. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

263. IVROP is a recipient of federal financial assistance and is subject to and must comply with Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a), and its implementing regulations, including 34 C.F.R. § 106.41.

264. Plaintiff was subjected to unwanted discrimination and treated differently because of her sex. This discrimination was caused by IVROP who fostered an environment that tolerated, encouraged, and/or allowed discrimination based on sex, thereby negatively impacting Plaintiff's CalWORKs placement.

265. IVROP, though its agents, created an environment that, among other things, tolerated sexual harassment, which negatively impacted the terms and conditions of Plaintiff's CalWORKs placement by denying her the benefits and ability to continue her WEX/WTW placement.

266. IVROP discriminated against Plaintiff because of her sex.

267. Plaintiff was discriminated against because of her sex by, among other things being: (1) subjected to pervasive sexual harassment due to her sex, (2) denied an employment position because of her sex, which includes a denial of the Paid Call / Reserve Firefighter position and being prevented from continuing her WEX/WTW placement due to her sex; (3) and subjected to a work environment where men would receive preferential treatment.

268. Plaintiff's sex was a substantial motivating factor for the unwanted touching, intimidation, assaults, creation of an overall hostile work environment, adverse employment actions, and termination from her WEX/WTW placement.

269. The conduct of IVROP was a substantial factor in causing Plaintiff's harm.

- 34 -

270. IVROP's conduct complained of herein is in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a), and its implementing regulations, including 34 C.F.R. § 106.41.

271. As an actual and proximate result of the aforementioned violations, Plaintiff has been harmed in an amount according to proof.  As an actual and proximate result of IVROP's discrimination, Plaintiff has lost wages and/or benefits, and suffered extreme emotional distress, depression, PTSD, and Major Depressive Disorder.

**COUNT IV**
**HARASSMENT**
**IN VIOLATION OF FEHA**
**GOVT. CODE § 12940(j)**
*Against All Defendants*

272. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

273. Every individual is entitled to work in a harassment-free environment and an employer's failure or refusal to provide this, in and of itself, is the denial of "terms, conditions, privileges of employment" and is a violation of the law.  *See* Government Code Sections 12940, *et seq.*; 2 Cal. Admin. Code 7287.6; *see also generally, Harris v. Forklift Systems, Inc*. 114 S.Ct. 367 (1993).

274. California Government Code § 12940(j) prohibits an employer and any person from harassing any employee on the bases of sex.

275. Specifically, "an employer, labor organization, employment agency, apprenticeship training program or any training program leading to employment, or any other person" is prohibited "because of . . . sex, gender, gender identity, [or] gender expression . . . [from] harass[ing] an employee, an applicant, an unpaid intern or volunteer, or a person providing services pursuant to a contract." California Government Code § 12940(j)(1).

KAZEROUNI
LAW GROUP, APC

276. "Harassment of an employee, an applicant, an unpaid intern or volunteer, or a person providing services pursuant to a contract by an employee, other than an agent or supervisor, shall be unlawful if the entity, or its agents or supervisors, knows or should have known of this conduct and fails to take immediate and appropriate corrective action." *Id*.

277. "An employer may also be responsible for the acts of nonemployees, with respect to harassment of employees, applicants, unpaid interns or volunteers, or persons providing services pursuant to a contract in the workplace, if the employer, or its agents or supervisors, knows or should have known of the conduct and fails to take immediate and appropriate corrective action." *Id*.

278. "An entity shall take all reasonable steps to prevent harassment from occurring." *Id*.

279. "Loss of tangible job benefits shall not be necessary in order to establish harassment." *Id*.

280. Defendants are each subject to, and must comply with, California Government Code § 12940(j).

281. Plaintiff was subject to harassing conduct because she was a female.

282. The harassing conduct was severe and pervasive.

283. A reasonable person in Plaintiff's position would have considered the conduct complained of herein as hostile, abusive, and intimidating. Plaintiff considered the work environment to be hostile, abusive, and intimidating.

284. Defendants participated in, allowed, and/or enabled the harassing conduct both directly and through their agents.

285. Plaintiff was harmed as result of Defendants' conduct.

//

//

//

- 36 -
COMPLAINT FOR DAMAGES

## COUNT V
## SEXUAL HARASSMENT
## IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
## U.S.C. § 2000e-2(a)
### *Against All Defendants Except Mr. Llanas*

286. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

287. At all relevant times, Plaintiff was an employee within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*.

288. Upon information and belief, Defendants regularly employ fifteen (15) or more persons.

289. At all times relevant, Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-2, was in full force and effect and binding on each Defendant in which this claim is asserted against.

290. Plaintiff was subjected to unwelcome sexual harassment by her supervisor, Mr. Llanas, including sexually inappropriate comments, touching, conduct, advances, and other behavior of a sexual nature.

291. Plaintiff's supervisor, Mr. Llanas, engaged in severe and pervasive conduct that created an intimidating, hostile, abusive, and offensive work environment.

292. The harassment was based on Plaintiff's sex and unreasonably interfered with Plaintiff's work performance and terms and conditions of employment.

293. Defendants and their partners, agents and employees, created an environment that, among other things, tolerated sexual harassment, which negatively impacted the terms and conditions of Plaintiff's employment and CalWORKs placement by denying her the benefits of a Paid Call / Reserve Firefighter position and the ability to continue her WEX/WTW placement.

294. Defendants knew or should have known of the unlawful harassment and failed to take immediate and appropriate corrective action to prevent or stop the harassment.

COMPLAINT FOR DAMAGES

295. Because the harasser was Plaintiff's supervisor and exercised authority over Plaintiff's employment, Defendants are vicariously liable for the unlawful conduct.

296. Defendants and their partners, agents and employees, created an environment that, among other things, tolerated sexual harassment, which negatively impacted the terms and conditions of Plaintiff's employment and CalWORKs placement by denying her the benefits of a Paid Call / Reserve Firefighter position and the ability to continue her WEX/WTW placement.

297. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff suffered damages, including but not limited to emotional distress, humiliation, anxiety, loss of enjoyment of life, and other non-economic damages, as well as economic damages according to proof.

**COUNT VI**
**SEXUAL HARASSMENT**
**IN VIOLATION OF FEHA**
**GOVT. CODE § 12940(j)**
*Against All Defendants*

298. Defendants are each subject to, and must comply with, California Government Code § 12940(j).

299. Plaintiff was subjected to unwelcome sexual harassment by her supervisor, Mr. Llanas, including sexually inappropriate comments, touching, conduct, advances, and other behavior of a sexual nature.

300. Plaintiff's supervisor, Mr. Llanas, engaged in severe and pervasive conduct that created an intimidating, hostile, abusive, and offensive work environment.

301. The harassment was based on Plaintiff's sex/GENDER and unreasonably interfered with Plaintiff's work performance and terms and conditions of employment.

- 38 -
COMPLAINT FOR DAMAGES

302. Defendants and their partners, agents and employees, created an environment that, among other things, tolerated sexual harassment, which negatively impacted the terms and conditions of Plaintiff's employment and CalWORKs placement by denying her the benefits of a Paid Call / Reserve Firefighter position and the ability to continue her WEX/WTW placement.

303. Defendants knew or should have known of the unlawful harassment and failed to take immediate and appropriate corrective action to prevent or stop the harassment.

304. Defendants are strictly liable for the unlawful harassment committed by Plaintiff's supervisor pursuant to California Government Code § 12940(j).

305. Defendants failed to take all reasonable steps necessary to prevent harassment from occurring and failed to adequately investigate and remedy the harassment after learning of Plaintiff's complaints.

306. Defendants and their partners, agents and employees, created an environment that, among other things, tolerated sexual harassment, which negatively impacted the terms and conditions of Plaintiff's employment and CalWORKs placement by denying her the benefits of a Paid Call / Reserve Firefighter position and the ability to continue her WEX/WTW placement.

307. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff suffered damages, including but not limited to emotional distress, humiliation, anxiety, loss of enjoyment of life, and other non-economic damages, as well as economic damages according to proof.

308. Defendants have acted intentionally, maliciously, recklessly, and/or with conscious disregard for Plaintiff's federally protected rights, entitling Plaintiff to an award of punitive damages against Mr. Llanas.

//

//

- 39 -

COMPLAINT FOR DAMAGES

**COUNT VII**
**QUID PRO QUO SEXUAL HARASSMENT**
**IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964**
**42 U.S.C. § 2000e,** *et seq.*
*Against All Defendants Except Mr. Llanas*

309. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

310. At all relevant times, Plaintiff was an employee within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*

311. Upon information and belief, Defendants regularly employ fifteen (15) or more persons.

312. At all times relevant, Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, was in full force and effect and binding on each Defendant in which this claim is asserted against.

313. Plaintiff's supervisor, Mr. Llanas, subjected Plaintiff to unwelcome sexual advances, requests for sexual favors, and other verbal and/or physical conduct of a sexual nature.

314. Mr. Llanas expressly and/or impliedly conditioned employment benefits, opportunities, and advancement upon Plaintiff's submission to his sexual demands.

315. For instance, upon finding out she did not get selected for the Paid Call / Reserve Firefighter position, Mr. Llanas told Ms. Valdez it was because she would not give him any "chon-chon" (a slang term for sex).

316. Plaintiff refused to submit to her supervisor's sexual advances and demands.

317. Thereafter, Plaintiff was denied a job opportunity and employment position for which she was qualified. Plaintiff's rejection of her supervisor's sexual advances was a substantial motivating reason for the adverse employment action taken against her.

- 40 -
COMPLAINT FOR DAMAGES

318. Mr. Llanas also made frequent sexual advances directed towards Ms. Valdez while simultaneously holding the prospect of the Paid Call / Reserve Firefighter position over Ms. Valdez's head by stating he controlled who got the position.

319. The conduct described herein constituted quid pro quo sexual harassment in violation of Title VII.

320. Defendants are liable for the unlawful conduct of Plaintiff's supervisor, Mr. Llanas, because the supervisor acted with managerial and supervisory authority over Plaintiff's employment opportunities and working conditions.

321. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff suffered damages, including lost wages, lost employment benefits, emotional distress, humiliation, anxiety, and other economic and non-economic damages according to proof.

**COUNT VIII**
**QUID PRO QUO SEXUAL HARASSMENT**
**IN VIOLATION OF FEHA**
**GOVT. CODE § 12940(j)**
*Against All Defendants*

322. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

323. At all relevant times, Plaintiff was an employee within the meaning of FEHA.

324. Defendants are each subject to, and must comply with, California Government Code § 12940(j).

325. Plaintiff's supervisor, Mr. Llanas, subjected Plaintiff to unwelcome sexual advances, requests for sexual favors, and other verbal and/or physical conduct of a sexual nature.

326. Mr. Llanas expressly and/or impliedly conditioned employment benefits, opportunities, and advancement upon Plaintiff's submission to his sexual demands.

- 41 -

COMPLAINT FOR DAMAGES

327. For instance, upon finding out she did not get selected for the Paid Call / Reserve Firefighter position, Mr. Llanas told Ms. Valdez it was because she would not give him any "chon-chon" (a slang term for sex).

328. Plaintiff refused to submit to her supervisor's sexual advances and demands.

329. Thereafter, Plaintiff was denied a job opportunity and employment position for which she was qualified. Plaintiff's rejection of her supervisor's sexual advances was a substantial motivating reason for the adverse employment action taken against her.

330. Mr. Llanas also made frequent sexual advances directed towards Ms. Valdez while simultaneously holding the prospect of the Paid Call / Reserve Firefighter position over Ms. Valdez's head by stating he controlled who got the position.

331. The conduct described herein constituted quid pro quo sexual harassment in violation of California Government Code § 12940(j).

332. Pursuant to FEHA, Defendants are strictly liable for the harassing conduct of Plaintiff's supervisor.

333. Defendants failed to take all reasonable steps necessary to prevent discrimination and harassment from occurring.

334. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff suffered damages, including lost earnings, lost employment benefits, emotional distress, humiliation, anxiety, mental anguish, and other economic and non-economic damages according to proof.

335. Defendant's conduct was intentional, malicious, oppressive, and carried out with conscious disregard for Plaintiff's rights, entitling Plaintiff to punitive damages against Mr. Llanas pursuant to California Civil Code § 3294.

//

//

//

//

- 42 -

COMPLAINT FOR DAMAGES

## COUNT IX
## HOSTILE WORK ENVIRONMENT
## IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
## 42 U.S.C. § 2000e, *et seq.*
### *Against All Defendants Except Mr. Llanas*

336. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

337. At all relevant times, Plaintiff was an employee within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*.

338. Upon information and belief, Defendants regularly employ fifteen (15) or more persons.

339. At all times relevant, Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, was in full force and effect and binding on each Defendant in which this claim is asserted against.

340. Plaintiff was subjected to unwelcome harassment, discriminatory conduct, comments, advances, and other offensive behavior based on Plaintiff's sex and/or gender.

341. The unlawful conduct included, but was not limited to, sexually inappropriate comments, unwelcome sexual advances, offensive remarks, intimidation, humiliation, and other conduct of a sexual nature by Plaintiff's supervisor.

342. The harassment was severe and pervasive and created a hostile, intimidating, offensive, and abusive work environment.

343. Plaintiff subjectively perceived the work environment as hostile and abusive, and a reasonable person in Plaintiff's position would likewise have perceived the environment to be hostile and abusive.

344. The unlawful harassment unreasonably interfered with Plaintiff's work performance and altered the terms, conditions, and privileges of Plaintiff's employment.

- 43 -

COMPLAINT FOR DAMAGES

345. Defendants knew or should have known of the harassment and hostile work environment and failed to take immediate and appropriate corrective action to stop, prevent, and remedy the unlawful conduct.

346. Because the harassment was committed by Plaintiff's supervisor, Defendants are liable for the unlawful conduct under Title VII.

347. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff suffered damages, including emotional distress, humiliation, embarrassment, anxiety, mental anguish, loss of enjoyment of life, lost earnings, and other economic and non-economic damages according to proof.

**COUNT X**
**HOSTILE WORK ENVIRONMENT**
**IN VIOLATION OF FEHA**
**GOVT. CODE § 12940(j)**
*Against All Defendants*

348. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

349. At all relevant times, Plaintiff was an employee within the meaning of FEHA.

350. Defendants are each subject to, and must comply with, California Government Code § 12940(j).

351. Plaintiff was subjected to unwelcome harassment, discriminatory conduct, comments, advances, intimidation, and other offensive behavior based on Plaintiff's sex and/or gender.

352. The unlawful conduct included, but was not limited to, sexually offensive comments, unwelcome sexual advances, inappropriate touching and/or conduct, humiliating remarks, intimidation, and other conduct of a sexual nature by Plaintiff's supervisor and/or other employees.

353. The harassment was severe and pervasive and created a hostile, intimidating, offensive, and abusive working environment.

- 44 -
COMPLAINT FOR DAMAGES

354. Plaintiff subjectively perceived the work environment as hostile, intimidating, and abusive, and a reasonable person in Plaintiff's position would likewise have perceived the environment to be hostile, intimidating, and abusive.

355. The unlawful harassment substantially interfered with Plaintiff's work performance and altered the terms, conditions, and privileges of Plaintiff's employment.

356. Defendants are strictly liable for the harassing conduct committed by Plaintiff's supervisor pursuant to California Government Code § 12940(j).

357. Defendants knew or should have known of the harassment and failed to take immediate and appropriate corrective action to stop, prevent, investigate, and remedy the unlawful conduct.

358. Defendants further failed to take all reasonable steps necessary to prevent harassment and discrimination from occurring in the workplace.

359. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff suffered damages, including emotional distress, humiliation, embarrassment, anxiety, mental anguish, loss of earnings, loss of employment benefits, and other economic and non-economic damages according to proof.

**COUNT XI**
**HOSTILE WORK ENVIRONMENT**
**TITLE IX OF THE EDUCATION AMENDMENTS OF 1972**
**20 U.S.C. § 1681(A)**
*Against IVROP*

360. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

361. At all relevant times, Defendant operated an education program and/or activity receiving federal financial assistance within the meaning of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a).

COMPLAINT FOR DAMAGES

362. Plaintiff participated in and/or was employed in Defendant's education program or activity and was entitled to the protections afforded under Title IX.

363. During Plaintiff's employment and/or participation in Defendant's educational program or activity, Plaintiff was subjected to unwelcome sexual harassment, discriminatory conduct, comments, advances, intimidation, and other offensive behavior based on Plaintiff's sex.

364. The unlawful conduct included, but was not limited to, sexually offensive comments, unwelcome sexual advances, intimidation, humiliation, and other conduct of a sexual nature by Plaintiff's supervisor.

365. The harassment was severe, pervasive, and objectively offensive such that it deprived Plaintiff of equal access to Defendant's educational programs, activities, employment opportunities, and/or benefits.

366. Plaintiff subjectively perceived the environment as hostile, abusive, and offensive, and a reasonable person in Plaintiff's position would likewise have perceived the environment as hostile, abusive, and offensive.

367. Defendant had actual knowledge of the sexual harassment and hostile environment through reports, complaints, observations, and/or communications made to appropriate officials with authority to institute corrective measures.

368. Despite having actual knowledge, Defendant acted with deliberate indifference by failing to adequately investigate, stop, prevent, or remedy the harassment and hostile environment.

369. Defendant's failure to take prompt and effective remedial action prevented Plaintiff from continuing her placement at the Calipatria Fire Department.

370. As a direct and proximate result of Defendant's unlawful conduct and deliberate indifference, Plaintiff suffered damages, including emotional distress, humiliation, embarrassment, anxiety, mental anguish, loss of educational and/or employment opportunities, loss of earnings, and other economic and non-economic damages according to proof.

COMPLAINT FOR DAMAGES

371. Defendant's conduct was intentional, malicious, reckless, and/or carried out with conscious disregard for Plaintiff's federally protected rights.

## COUNT XII
## RETALIATION
## IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
## 42 U.S.C. § 2000e-3(a)
### *Against All Defendants Except Mr. Llanas*

372. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

373. At all relevant times, Plaintiff was an employee within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*.

374. Upon information and belief, Defendants regularly employ fifteen (15) or more persons.

375. At all times relevant, Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, was in full force and effect.

376. Plaintiff engaged in protected activity under Title VII by opposing and/or reporting unlawful discrimination, sexual harassment, hostile work environment, and/or other unlawful employment practices.

377. Defendants knew that Plaintiff engaged in protected activity.

378. After Plaintiff engaged in protected activity, Defendant subjected Plaintiff to adverse employment actions.

379. Specifically, Defendants denied Plaintiff a permanent job position for turning down her supervisor's advances and/or forced Plaintiff to discontinue her existing job placement and reassigned Plaintiff to an inferior assignment (mandated therapy) with less favorable duties, opportunities, conditions, status, and/or benefits.

KAZEROUNI
LAW GROUP, APC

380. The reassignment and removal from Plaintiff's prior placement constituted materially adverse employment actions that would deter a reasonable employee from engaging in protected activity.

381. Defendants, and each of them, knew of Plaintiff's protected activity, including Plaintiff's complaints of sexual harassment and Plaintiff's refusal to submit to unlawful sexual conduct.

382. Plaintiff's protected activity was a substantial motivating reason for Defendant's retaliatory conduct.

383. Defendants' retaliatory actions violated 42 U.S.C. § 2000e-3(a).

384. As a direct and proximate result of Defendants' unlawful retaliation, Plaintiff suffered damages, including lost earnings, lost employment opportunities, emotional distress, humiliation, anxiety, mental anguish, and other economic and non-economic damages according to proof.

**COUNT XIII**
**RETALIATION**
**IN VIOLATION OF FEHA**
**CAL. GOVT. CODE § 12940(h)**
***Against All Defendants***

385. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

386. At all relevant times, Plaintiff was an employee within the meaning of FEHA.

387. Defendants are each subject to, and must comply with, California Government Code § 12940(h).

388. Plaintiff engaged in protected activity under FEHA, including but not limited to opposing, reporting, and/or complaining about unlawful discrimination, sexual harassment, hostile work environment, and quid pro quo sexual harassment.

389. Defendants knew that Plaintiff engaged in such protected activity.

COMPLAINT FOR DAMAGES

390. Thereafter, Defendants subjected Plaintiff to adverse employment actions, including denying Plaintiff a permanent job position for turning down her supervisor's advances, forcing Plaintiff to discontinue her job placement and/or reassigning Plaintiff to an inferior assignment with less favorable duties, conditions, status, and/or opportunities.

391. The adverse employment actions were materially detrimental and would deter a reasonable person from engaging in protected activity.

392. Plaintiff's protected activity was a substantial motivating reason for Defendants' retaliatory conduct in violation of California Government Code § 12940(h).

393. Defendants' conduct was intentional, retaliatory, and undertaken in violation of Plaintiff's statutory rights under FEHA.

394. As a direct and proximate result of Defendants' unlawful retaliation, Plaintiff suffered damages, including lost wages, loss of employment benefits, emotional distress, humiliation, anxiety, mental anguish, and other economic and non-economic damages according to proof.

## COUNT XIV
## WHISTLEBLOWER RETALIATION
## IN VIOLATION OF
## CAL. LAB. CODE § 1102.5
### *Against All Defendants*

395. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

396. Defendants' foregoing acts and omissions constitute retaliation in violation of Cal. Lab. Code § 1102.5.

397. Plaintiff engaged in protected activity under California Labor Code § 1102.5 by, including but not limited to, reporting and/or disclosing conduct that Plaintiff reasonably believed constituted violations of law, including sexual harassment

KAZEROUNI LAW GROUP, APC

and unlawful workplace conduct in violation of the Fair Employment and Housing Act, California Government Code § 12940. *et seq*., and other applicable laws.

398. Plaintiff further engaged in protected activity by refusing to participate in unlawful conduct, including refusing sexual demands made in exchange for employment benefits and promotion opportunities.

399. After Plaintiff engaged in protected activity, Defendants retaliated against Plaintiff.

400. Such retaliatory conduct included, but was not limited to: (a) instructing Plaintiff to "stay away" from the fire station after she lodged her complaints; (b) excluding Plaintiff from the workplace and changing her CalWORKs assignment; (c) denying Plaintiff an employment opportunity; (d) subjecting Plaintiff to adverse employment treatment, including loss of work opportunities and professional advancement; and (e) otherwise materially altering the terms and conditions of Plaintiff's employment.

401. There is a direct and substantial causal connection between Plaintiff's protected activity and Defendants' adverse employment actions. The retaliation occurred shortly after Plaintiff reported sexual harassment and refused unlawful sexual demands, and was motivated by retaliatory animus.

402. Defendants, and each of them, were aware of Plaintiff's protected activity at the time they took adverse employment actions against Plaintiff.

403. As a direct and proximate result of Defendants' unlawful retaliation, Plaintiff has suffered damages including, but not limited to, loss of earnings and employment benefits, loss of future employment opportunities, emotional distress, humiliation, and other general and special damages in an amount according to proof at trial.

404. As a result of Defendants' actions in violating Cal. Lab. Code § 1102.5, Plaintiff is entitled to any actual damages, a civil penalty in an amount up to $10,000 pursuant to Cal. Lab. Code § 1102.5(f), and lost wages.

//

COMPLAINT FOR DAMAGES

**COUNT XV**
**FAILURE TO PREVENT DISCRIMINATION AND HARASSMENT**
**IN VIOLATION OF FEHA**
**CAL. GOVT. CODE § 12940(k)**
*Against All Defendants*

405. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

406. At all relevant times, Plaintiff was an employee within the meaning of FEHA.

407. Defendants are each subject to, and must comply with, California Government Code § 12940(k), including its requirement to take all reasonable steps necessary to prevent discrimination, harassment, and retaliation.

408. FEHA Section 12940(k) imposes on the employer the duty to take all reasonable steps to prevent this harassment (as well as discrimination) from occurring in the first place and to take immediate and appropriate action when it is or it should be aware of the unlawful conduct.

409. FEHA imposes a mandatory duty on employers to take all reasonable steps to prevent and promptly correct discriminatory harassment, sexual harassment, and retaliation in the workplace.

410. Plaintiff was subjected to discrimination, sexual harassment, hostile work environment, quid pro quo sexual harassment, and retaliation as alleged herein.

411. Defendants failed to take all reasonable steps necessary to prevent such unlawful conduct from occurring, despite having actual and/or constructive knowledge of the risk of discrimination, harassment, and retaliation.

412. Defendants further failed to properly investigate, address, correct, or remedy the unlawful conduct after it occurred and/or after Plaintiff complained.

413. Defendants' policies, practices, supervision, training, and enforcement were inadequate to prevent discrimination, harassment, and retaliation in the workplace.

COMPLAINT FOR DAMAGES

414. As a direct and proximate result of Defendants' failure to prevent discrimination, harassment, and retaliation, Plaintiff suffered harm, including emotional distress, humiliation, anxiety, mental anguish, loss of earnings, loss of employment opportunities, and other economic and non-economic damages according to proof.

415. Defendants' failure to act was a substantial factor in causing Plaintiff's damages.

416. Defendants acted with reckless disregard of Plaintiff's rights and in violation of California Government Code § 12940(k), entitling Plaintiff to recover all damages allowed by law, including attorneys' fees and costs.

**COUNT XVI**
**VIOLATIONS OF THE BANE ACT**
**CAL. CIV. CODE, § 52.1**
***Against the City, the Calipatria Fire Department, IVROP, CalWORKs, Mr. Llanas***

417. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

418. "Any individual whose exercise or enjoyment of rights secured by the Constitution or laws of the United States, or of rights secured by the Constitution or laws of this state, has been interfered with, or attempted to be interfered with . . . may institute and prosecute in their own name and on their own behalf a civil action for damages, including, but not limited to, damages under Section 52, injunctive relief, and other appropriate equitable relief to protect the peaceable exercise or enjoyment of the right or rights secured, including appropriate equitable and declaratory relief to eliminate a pattern or practice of conduct as described in subdivision (b)." Cal. Civ. Code, § 52.1(c).

419. "The essence of a Bane Act claim is that the defendant, by the specified improper means (i.e., 'threat[], intimidation or coercion'), tried to or did prevent the plaintiff from doing something he or she had the right to do under the law or to

- 52 -
COMPLAINT FOR DAMAGES

force the plaintiff to do something that he or she was not required to do under the law." *King v. State of Cal.*, 242 Cal. App. 4th 265, 294 (2015).

420. At all relevant times, Plaintiff possessed civil and statutory rights protected under California law, including but not limited to the right to be paid for all hours worked, the right to refuse unlawful uncompensated labor, the right to receive minimum wages and overtime compensation, and the right to be free from coercive labor practices in violation of California public policy and the California Labor Code.

421. Defendants intentionally interfered with, and attempted to interfere with, Plaintiff's exercise and enjoyment of those rights by threats, intimidation, and coercion.

422. Defendants, through their managers, supervisors, agents, and/or authorized representatives, coerced Plaintiff into performing work without compensation by means of implied threats of termination and denial of permanent position, retaliation, blacklisting, and other adverse employment consequences designed to compel Plaintiff's compliance.

423. Defendants caused Plaintiff reasonably to believe that if Plaintiff refused to perform unpaid work or attempted to exercise Plaintiff's rights under California labor laws, Defendants would subject Plaintiff to adverse employment action.

424. Defendants acted intentionally and/or with reckless disregard for Plaintiff's protected rights and interests, including Plaintiff's right to lawful compensation for labor performed and Plaintiff's right to refuse involuntary uncompensated work.

425. The threats, intimidation, and coercion employed by Defendants were separate from, and in addition to, the underlying wage-and-hour violations themselves, and were specifically intended to compel Plaintiff's continued submission to unlawful unpaid labor practices.

COMPLAINT FOR DAMAGES

426. As a direct and proximate result of Defendants' conduct, Plaintiff suffered damages, including but not limited to unpaid wages, lost compensation, emotional distress, anxiety, humiliation, economic harm, and other general and special damages according to proof.

427. Defendants' conduct was a substantial factor in causing Plaintiff's harm.

428. Defendants acted maliciously, oppressively, and/or fraudulently, entitling Plaintiff to an award of punitive damages under California law against Mr. Llanas.

## COUNT XVII
## NEGLIGENT SUPERVISION, HIRING AND RETENTION
### *All Defendants*

429. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

430. At all relevant times, Defendants owed Plaintiff a duty to exercise reasonable care in the hiring, training, supervision, discipline, and retention of its employees, agents, and supervisors.

431. Defendants knew or, in the exercise of reasonable care, should have known that Mr. Llanas, had a propensity to engage in unlawful, inappropriate, and/or abusive conduct, including sexual harassment, quid pro quo harassment, hostile work environment conduct, discrimination, and retaliation.

432. Despite such knowledge, Defendants negligently hired, retained, and failed to adequately supervise and control its employees, agents, and supervisors.

433. Defendants failed to implement or enforce adequate policies, procedures, training, and oversight to prevent unlawful conduct in the workplace.

434. Defendants further failed to take reasonable corrective action after learning, or having reason to learn, that Mr. Llanas engaged in unlawful conduct toward Plaintiff and/or other employees.

COMPLAINT FOR DAMAGES

435. As a direct and proximate result of Defendants' negligence in hiring, supervision, and retention, Plaintiff was subjected to sexual harassment, hostile work environment, quid pro quo harassment, discrimination, and retaliation as alleged herein.

436. Defendants' negligent conduct was a substantial factor in causing Plaintiff's injuries and damages.

437. As a direct and proximate result of Defendants' negligence, Plaintiff suffered damages, including but not limited to emotional distress, humiliation, anxiety, mental anguish, loss of earnings, loss of employment opportunities, and other economic and non-economic damages according to proof.

438. Defendants' conduct demonstrated a reckless disregard for the safety, rights, and well-being of Plaintiff.

**COUNT XVIII**
**NEGLIGENCE**
*Against the City and the Calipatria Fire Department*

439. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

440. At all relevant times, Defendants owed Plaintiff a duty to exercise reasonable care in providing a safe workplace, including ensuring that Plaintiff was not assigned duties without appropriate training, supervision, or proper safety equipment.

441. Defendants further owed Plaintiff a duty to comply with applicable workplace safety standards, including providing necessary protective equipment and ensuring that employees assigned to hazardous duties could perform those duties safely.

442. Defendants breached these duties by permitting and/or requiring Plaintiff to assume the duties of a firefighter and/or firefighter-related assignments without providing proper equipment, training, or safety safeguards.

- 55 -

443. Defendants knew or reasonably should have known that assigning Plaintiff to firefighting duties without proper equipment created a foreseeable and substantial risk of serious bodily injury.

444. Despite this knowledge, Defendants failed to take reasonable steps to prevent harm to Plaintiff, including failing to provide adequate protective gear, failing to ensure safe working conditions, and failing to properly supervise Plaintiff's assignment.

445. Defendants' conduct fell below the standard of care required of employers in similar circumstances.

446. As a direct and proximate result of Defendants' negligence, Plaintiff was exposed to unsafe working conditions and suffered emotional distress.

447. Defendants' negligence was a substantial factor in causing Plaintiff's injuries and damages.

## COUNT XIX
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### *Against the City, the Calipatria Fire Department Mr. Llanas*

448. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

449. At all relevant times, Mr. Llanas acted within the course and scope of employment and/or with apparent authority granted by Defendants.

450. Defendant's supervisor engaged in extreme and outrageous conduct toward Plaintiff, including but not limited to sexual harassment, unwanted sexual advances, quid pro quo sexual demands, groping, sexual touching, threats, intimidation, and other abusive and degrading conduct.

451. Mr. Llanas' conduct was intentional, reckless, and undertaken for the purpose of causing Plaintiff severe emotional distress, or with reckless disregard of the probability that Plaintiff would suffer such distress.

452. The conduct described herein was so extreme and outrageous that it exceeded all bounds of decency tolerated in a civilized society.

453. Plaintiff suffered severe emotional distress as a direct and proximate result of Mr. Llanas' conduct, including but not limited to humiliation, anxiety, fear, shame, mental anguish, PTSD, Major Depressive Disorder, and emotional suffering.

454. Defendants, through its supervisor, either engaged in the conduct directly or ratified, failed to prevent, and/or failed to correct the conduct despite knowledge or reason to know of the abuse.

455. As a direct and proximate result of Defendants' intentional and/or reckless conduct, Plaintiff suffered damages according to proof.

456. Ms. Llanas acted with malice, oppression, and fraud, entitling Plaintiff to punitive damages pursuant to California Civil Code § 3294.

**COUNT XX**
**ASSAULT AND BATTERY**
*Against the City, the Calipatria Fire Department, and Mr. Llanas*

457. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

458. At all relevant times, Mr. Llanas acted within the course and scope of employment and/or with apparent authority granted by Defendants.

459. At various times during Plaintiff's employment, Mr. Llanas intentionally engaged in unlawful and unwanted physical contact with Plaintiff, including groping and other sexual touching without Plaintiff's consent.

460. Mr. Llanas also engaged in conduct that placed Plaintiff in reasonable apprehension of imminent harmful and offensive contact, including sexually aggressive behavior and verbal and physical conduct of a threatening and sexual nature.

461. Plaintiff did not consent to any of the physical contact or sexual touching.

KAZEROUNI
LAW GROUP, APC

462. Mr. Llanas intended to cause harmful or offensive contact with Plaintiff and/or intended to cause Plaintiff to fear such contact.

463. Plaintiff was harmed by Mr. Llanas' offensive and unlawful physical contact and apprehension of such contact.

464. A reasonable person in Plaintiff's position would have been placed in apprehension of imminent harmful or offensive contact under the same circumstances.

465. As a direct and proximate result of Mr. Llanas' conduct, Plaintiff suffered injuries and damages, including emotional distress, humiliation, fear, anxiety, mental anguish, and other economic and non-economic damages according to proof.

466. Defendants are vicariously liable for the wrongful acts of its supervisor committed within the course and scope of employment and/or aided by the authority of employment.

467. Defendants' conduct, through its supervisor, was intentional, malicious, oppressive, and carried out with conscious disregard for Plaintiff's rights., entitling Plaintiff to punitive damages against Mr. Llanas pursuant to California Civil Code § 3294.

### COUNT XXI
### FALSE IMPRISONMENT
*Against the City, the Calipatria Fire Department, and Mr. Llanas*

468. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

469. At all relevant times, Mr. Llanas acted within the course and scope of employment and/or with apparent authority granted by Defendants.

470. On at least one occasion, Plaintiff was a passenger in a vehicle operated by her supervisor, Mr. Llanas, in connection with work-related duties and/or employment-related travel.

471. While Plaintiff was inside the vehicle, the supervisor intentionally engaged in unwanted and unlawful physical contact, including groping and other sexual touching and attempted touching of Plaintiff without her consent.

472. At the time of the unlawful conduct, Plaintiff was confined inside the vehicle because Mr. Llanas was driving, and Plaintiff was not free to leave without risk of harm or without being unlawfully restrained.

473. Mr. Llanas' control of the vehicle and circumstances of travel created a situation in which Plaintiff was intentionally restrained and deprived of her freedom of movement against her will.

474. Plaintiff did not consent to the restraint or the sexual contact.

475. Plaintiff was aware of her confinement and had no reasonable means of immediate escape while the vehicle was in motion or otherwise under the control of the supervisor.

476. Defendants, through its supervisor, intentionally confined Plaintiff without lawful privilege or justification.

477. As a direct and proximate result of the false imprisonment, Plaintiff suffered damages, including emotional distress, humiliation, fear, anxiety, mental anguish, and other economic and non-economic damages according to proof.

478. Defendant's conduct was intentional, malicious, oppressive, and carried out with conscious disregard of Plaintiff's rights, entitling Plaintiff to punitive damages against Mr. Llanas pursuant to California Civil Code § 3294.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff hereby prays for judgment against all Defendants and relief as follows:

- For compensatory damages and out of pocket harm according to proof;

COMPLAINT FOR DAMAGES

- For statutory damages pursuant to Civil Code section 52 up to a maximum of three times the amount of actual damage but in no case less than four thousand dollars ($4,000);

- For emotional distress damages;

- For punitive damages against Mr. Llanas;

- Actual damages, a civil penalty in an amount up to $10,000 pursuant to Cal. Lab. Code § 1102.5(f), and lost wages;

- An award of interest for all statutory amounts;

- General damages, including emotional distress damages;

- Pecuniary loss;

- Lost wages and benefits to be determined at trial;

- For an award of back pay: the wages that Plaintiff would have earned up to today, including any benefits and pay increases;

- For an award of front pay: the present cash value of any future wages and benefits that Plaintiff would have earned for the length of time the employment would have been reasonably certain to continue;

- For declaratory and injunctive relief as appropriate;

- For reasonable attorneys' fees and costs pursuant to Government Code section 12965(b);

- Attorneys' fees and costs pursuant to Civil Code section 52;

- Attorneys' fees and costs pursuant to 42 U.S.C. § 2000e-5(k);

- Attorneys' fees and costs pursuant to California Government Code § 12965(b)

- For pre-judgment and post-judgment interest;

- For such other and further relief as the Court deems just and proper.

**TRIAL BY JURY**

479. Pursuant to the Seventh Amendment to the Constitution of the United States of America, Plaintiff is entitled to, and demands, a trial by jury.

COMPLAINT FOR DAMAGES

Dated: May 15, 2026

Respectfully submitted,

**KAZEROUNI LAW GROUP, APC**

By:   *DAVID MCGLOTHLIN, ESQ.*
DAVID MCGLOTHLIN, ESQ.
PAMELA E. PRESCOTT, ESQ.
ATTORNEY FOR PLAINTIFF

**KAZEROUNI LAW GROUP, APC**
Nadir O. Ahmed, Esq. (SBN: 290810)
nadir@kazlg.com
2221 Camino del Rio S #101,
San Diego, CA 92108
Telephone: (800) 400-6808
Facsimile:  (800) 520-5523

COMPLAINT FOR DAMAGES